UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| HEXAGON MANUFACTURING INTELLIGENCE, INC., A DELAWARE CORPORATION,<br><br>        PLAINTIFF,<br><br>v.<br><br>MS MANUFACTURING, LLC D/B/A KIHM METAL TECHNOLOGIES, AN INDIANA LIMITED LIABILITY COMPANY, AND JAMES BAILEY, AN INDIVIDUAL,<br><br>        DEFENDANTS. | CASE NO. 2:26-CV-00017 |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT,
VICARIOUS INFRINGEMENT, BREACH OF CONTRACT,
AND PERMANENT INJUNCTION**

Plaintiff Hexagon Manufacturing Intelligence, Inc. asserts the following claims against MS Manufacturing, LLC d/b/a KIHM Metal Technologies and James Bailey.

**NATURE OF THE ACTION**

1.      Plaintiff Hexagon Manufacturing Intelligence, Inc. ("Hexagon") is a Delaware corporation and a world-renowned leader in computer-aided design and manufacturing technology. Hexagon develops and licenses software to support design and manufacturing processes for tooling, production engineering, sheet metal, metal fabrication, stone, and woodworking industries.

2.      Hexagon's innovative Surfcam and Edgecam software affords the production machining market with the power of sophisticated toolpath generation and seamless computer-assisted design integration for milling, turning, and mill-turn machining.

3.      This is an action against Defendants MS Manufacturing, LLC d/b/a KIHM Metal Technologies ("KIHM") and James "Jim" Bailey ("Mr. Bailey") (collectively, "Defendants"), for infringing Hexagon's exclusive rights under the Copyright Act, 17 U.S.C. § 101 et seq., arising out of out of Defendants' unauthorized use of unlicensed Edgecam software ("Edgecam"). Defendants

committed willful and blatant acts of copyright infringement by improperly using unlicensed software without authorization for their own financial gain.

4.     Hexagon informed Defendants of their infringement and demanded they end their unlawful use of the unlicensed software. Defendants have refused to confirm they will stop infringing or remedy their wrongdoing.

5.     Hexagon should be awarded injunctive relief and monetary damages to remedy and redress Defendants' willful piracy of Hexagon's copyrighted software and to thwart future infringement of its software.

## PARTIES

6.     Hexagon is a corporation organized under the laws of the State of Delaware, with its principal place of business at Hexagon Manufacturing Intelligence, 250 Circuit Drive, North Kingstown, Rhode Island 02852.

7.     Hexagon owns and controls the copyrights and exclusive rights in the software it produces and non-exclusively licenses.

8.     Specifically, Hexagon has obtained Certificates of Copyright Registration for its suite of Edgecam software products, including, but not limited to, Registration Numbers TX 9-190-546, TX 9-112-780, TX 9-112-083, TX 9-114-232, TX 9-112-845, TX 9-112-111, TX 9-113-850, TX 9-190-523, TX 9-122-202, TX 9-190-568, TX 9-190-571, TX 9-190-546, and TX 4-086-003 (collectively, "Copyrighted Works").

9.     Defendant KIHM exists under the laws of the state of Indiana, with its principal place of business at 301 N. Murphy Ave., Brazil, Indiana 47834. The only member for KIHM reflected on the Indiana Secretary of State website is Bryan Kay Davis and confirms Mr. Davis is located at the same address as KIHM in Brazil, Indiana. *See* https://bsd.sos.in.gov/PublicBusinessSearch/BusinessInformationFromIndex (last visited Jan. 8, 2026).

10.     On information and belief, Defendant Mr. Bailey was employed by KIHM as its

Engineering Manager at its location in Brazil, Indiana, and now lives and/or works in Terre Haute, Indiana in this judicial district.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b) because this is an action arising under the copyright laws of the United States, 17 U.S.C. § 101, et seq., seeking damages, injunctive, and other relief.

12. This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because Hexagon and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.

13. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because the Court has original jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

14. This Court has personal jurisdiction over KIHM because it is an Indiana limited liability company authorized to do business in Indiana with its principal place of business in Brazil, Indiana.

15. This Court has personal jurisdiction over Mr. Bailey because he works and resides in this judicial district in Terre Haute, Indiana.

16. On information and belief, Defendants transact, conduct, and/or solicit business in Indiana and within this judicial district, and Defendants committed tortious acts in Indiana and this judicial district. On information and belief, Defendants may own, use, or possess property in Indiana.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## BACKGROUND FACTS

### Plaintiff Hexagon and its Copyrighted Works

18. Hexagon and its affiliates are globally recognized leaders in computer-aided technology.

19. Planit Software Limited is an entity domiciled in the United Kingdom and the author of Edgecam. Pursuant to a distribution agreement, Planit Software Limited granted Vero Software

Inc. now known as Hexagon Manufacturing Intelligence, Inc. exclusive rights to reproduce, distribute, perform, and display Edgecam in the United States, including the right to enforce the copyrights and pursue any available legal remedies against infringers of Edgecam in the United States.

20. On June 17, 2021, Vero Software, Inc. merged into Hexagon Manufacturing Intelligence, Inc. pursuant to an Agreement of Merger and Certificate of Merger of Foreign Corporation into a Domestic Corporation.

21. Hexagon non-exclusively licenses its Edgecam computer-aided software to customers to assist with the operation of Computer Numerical Control ("CNC") machinery.

22. Edgecam is a computer-aided manufacturing ("CAM") software system that provides excellent CAM platforms, full of functionality to help businesses become more productive and profitable.

23. Although some CNC machinery is designed with integrated operating software, most commercial CNC machinery is separate from the operating software, allowing the machinery owner to select and buy the most appropriate applications to suit its needs.

24. Edgecam allows a customer's computers and CNC machinery to work in tandem in a networked environment, designing, storing and modifying files, and then using those files to fashion products for sale.

25. Between August 2000 and August 2003, Defendant KIHM acquired from Hexagon three non-exclusive licenses to Hexagon's Surfcam software (the "Licensed Products"). Without software like Edgecam and Surfcam, a CNC machine cannot produce custom products for sale like the products Defendant KIHM sells to its customers.

26. Critical to the success of its business, Hexagon protects its software products, including Surfcam and Edgecam, under the terms of an End User License Agreement ("EULA"). The EULA explicitly provides that Hexagon, as licensor, does not sell its software to its customers.

27. In consideration of a customer's compliance with the terms of the EULA and

payment of a license fee, Hexagon grants its legitimate customers, as licensees, a non-exclusive, non-sublicensable, non-transferable, limited license to install, access, and use the licensed software under the terms of the EULA.

28. The EULA is included as part of the installation process for each version of the Edgecam software. In turn, a user must agree to the terms of the EULA prior to installation.

29. To safeguard its software, Hexagon implements security measures to discover and deter piracy. Specifically, the EULA permits Hexagon to utilize internal diagnostic tools (i.e., technical protection measures or "TPM") to detect and collect data concerning the installation and/or use of unauthorized copies of its copyright-protected software, including the Copyrighted Works.

30. Using the TPM, Hexagon can monitor usage of its software products, including its software. This allows Hexagon to know if a product was copied and accessed.

31. Users of Hexagon's software consent to the use of the TPM and the detection and collection of personally identifiable data, as well as transmission and use of that data if an unlicensed copy is detected.

32. Hexagon offers and sells Edgecam licenses and maintenance support plans using established price lists.

33. Hexagon continually works to improve its suite of Edgecam products. Customers who utilize maintenance support plans with Hexagon are entitled to new releases of the software products as well as certain updates and technical support.

34. As part of the purchase of a new Edgecam license, new customers purchase maintenance support plans. Customers are not required to, but may, purchase additional yearly maintenance support plans thereafter.

35. The Copyrighted Works contain materials wholly original to Hexagon and consists of copyrightable subject matter under the U.S. Copyright Act, 17 U.S.C. § 101, et seq.

36. Hexagon has not provided authorization, permission, or consent to Defendants to copy or install unlicensed infringing copies of Hexagon's Copyrighted Works.

**Defendants' Unlawful Conduct**

37. Beginning in August 2000 through August 2003, Defendant KIHM acquired from Hexagon non-exclusive licenses to Hexagon's Surfcam software (the "Licensed Products"). Without software like Surfcam, a CNC machine cannot produce custom products for sale like the products Defendant KIHM sells to its customers.

38. Like all users of Hexagon's software products, and as a prerequisite to installation, when KIHM installed its Licensed Products, it was required to and did accept the terms and conditions of the click-through EULAs embedded in those products.

39. Defendant KIHM also acquired annual maintenance support plans for the Licensed Products, which all lapsed on December 31, 2017.

40. Once KIHM allowed the annual maintenance support plans for the Licensed Products to lapse for longer than five years, Hexagon considered the Licensed Products "sunsetted." Although the licenses continue to work through the duration of the license terms, a "sunsetted" license means it is not possible to purchase a maintenance support plan after five years of lapsed maintenance support. This means that if a customer like KIHM requires a newer version, updates, or troubleshooting, it would have had to purchase a new license once its Licensed Products were sunsetted due to its lapsed maintenance support.

41. Despite Hexagon's diligence to eliminate piracy affecting the development of new technology and causing significant revenue loss to software companies like Hexagon worldwide, Hexagon's TPM data capture system revealed that Defendants engaged in furtive, unlawful, and willful infringing conduct.

42. On January 24, 2023, Hexagon discovered someone copied, downloaded, and installed a newer version of Hexagon's Edgecam software (the "Infringing Product").

43. Hexagon's forensic investigation revealed that Defendants installed the Infringing Product on a computer identified as "ws-kihm-jim" with usernames "jim bailey," "jbailey", and "byates," MAC address B0:4F:13:16:91:F4, affiliated email address jbailey@kihmmetaltech.com,

and connected to IP addresses 159.118.18.240, 159.118.21.75, and 173.207.158.66. On information and belief, the references to "jim bailey" and "jbailey" are KIHM former employee Defendant Mr. Bailey. Further, WiFi geolocation data reveals Defendants copied the Infringing Product at KIHM's facility located at 301 N. Murphy Ave., Brazil, Indiana on its WiFi connection.

44. Defendants accessed one of its Licensed Products on the same machine (i.e., computer ws-kihm-jim and MAC address B0:4F:13:16:91:F4) the year prior to the conduct concerning the Infringing Product.

45. Defendants infringed Hexagon's Copyrighted Works without compensation to Hexagon and in direct violation of the EULAs and federal copyright law.

46. Hexagon demanded Defendants stop infringing the Copyrighted Works.

47. The value of one licensed Edgecam product is $57,850 and a one-year maintenance support plan is $10,413.

48. Without payment or authorization, Defendants copied unlicensed Edgecam software, presumably to use at KIHM's facility in Brazil, Indiana.

49. The unlicensed Infringing Product is not the same as the Licensed Products that KIHM non-exclusively licenses from Hexagon.

50. Mr. Bailey accessed the Licensed Products and the Infringing Product while working for and for the benefit of KIHM.

51. On information and belief, Mr. Bailey stopped working for KIHM in early May 2024 after Hexagon demanded Defendants stop infringing its Copyright Work.

52. On information and belief, Defendants used the Infringing Product to conduct business, create files and/or to manufacture products for which they charge their customers.

53. On information and belief, Defendants have directly profited from their unauthorized and illegal use of the Infringing Product.

54. Defendants knew or should have known installation and use of the Infringing Product violated Hexagon's copyrights and the EULA, especially because the Copyrighted Works, the

Infringing Product, and the Valid Licenses contain explicit notices identifying the copyright owner.

55. Defendants are in willful violation of the law for copying and accessing the Infringing Product without a valid license.

56. As part of Defendants' installation of the Valid Licenses and the Infringing Product, they entered valid and binding contracts with Hexagon (i.e., the EULAs) related to the ownership of Hexagon's Copyright Work and Defendants' prohibited use of Hexagon's software, among other terms and conditions.

57. Specifically, KIHM agreed it is precluded from unlawfully copying Hexagon's software and from accessing unlocked source code.

58. KIHM further agreed to use Hexagon's software within the scope of the license grant.

59. KIHM also agreed to supervise and control its users' use of Hexagon's software and ensure its employees use Hexagon's software in accordance with the terms of the EULA.

60. KIHM also agreed Hexagon and its affiliates shall not under any circumstances be liable to KIHM in connection with its software.

61. KIHM further acknowledged that Hexagon takes piracy very seriously and has a zero tolerance on the piracy of its software.

62. Hexagon's remedy at law is inadequate to compensate it fully for its injuries. Unless enjoined, Defendants' actions will likely continue, causing irreparable damage to Hexagon. It would be extremely difficult or impossible to estimate the amount of compensation necessary to afford Hexagon complete monetary relief for continuing acts damaging Hexagon's intangible assets and goodwill. Absent injunctive relief, Hexagon will continue to be harmed by Defendants' infringing activities.

## COUNT I

### Copyright Infringement Against Jim Bailey

**(17 U.S.C. § 501)**

63. Hexagon incorporates and realleges, as if fully set forth herein, the allegations

contained in the foregoing paragraphs of this Complaint.

64. Hexagon is the owner of the exclusive right to reproduce, distribute, perform, and display the Copyrighted Works, and is entitled to bring an action for copyright infringement for unlawful copying pursuant to 17 U.S.C. § 501, et seq.

65. Mr. Bailey did not have Hexagon's authorization to copy, install, or use the Infringing Product.

66. Mr. Bailey copied the Infringing Product and, therefore, infringed Hexagon's exclusive rights granted by the Copyright Act, 17 U.S.C. § 106.

67. Mr. Bailey's act of infringement is willful and in disregard of and with indifference to Hexagon's rights given the notices on the Copyrighted Works "About" page viewable at installation and because KIHM, his employer, is a preexisting Hexagon customer.

68. On information and belief, Mr. Bailey profited by his unlawful actions and/or stood to profit from use of the Infringing Product without paying the customary price.

69. As a direct and proximate result of the infringement, Hexagon is entitled to actual damages and any ill-gotten profits in amounts to be proven at trial.

70. Alternatively, at its election, Hexagon is entitled to statutory damages, up to the maximum amount of $150,000 per infringing work for Mr. Bailey's willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

71. Hexagon further is entitled to recover its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

72. As a direct and proximate result of Mr. Bailey's acts and conduct, Hexagon has sustained and will sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Mr. Bailey will likely continue to infringe Hexagon's rights in the Copyrighted Works. Hexagon is entitled to injunctive relief under 17 U.S.C. § 502.

## COUNT II

### Vicarious Infringement Against KIHM

### (17 U.S.C. § 501)

73. Hexagon incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

74. Hexagon is the owner of the exclusive right to reproduce, distribute, perform, and display the Copyrighted Works, and is entitled to bring an action for copyright infringement pursuant to 17 U.S.C. § 101, et seq.

75. On information and belief, Mr. Bailey was employed by KIHM at the time of the infringing conduct.

76. On information and belief, Mr. Bailey, as KIHM's first employee, had a direct stake in the financial success of KIHM and sought to minimize expenses by avoiding a license fee and utilizing the Infringing Product.

77. At the time of the infringing conduct, KIHM's Licensed Products were "sunsetted" licenses, meaning KIHM could no longer purchase maintenance support plans for the products, receive newer versions, troubleshooting, or updates, and would have had to purchase a new license.

78. KIHM has a direct financial interest in the infringing activity of its employees and/or agents, including Mr. Bailey, by reaping the benefits of newer, more sophisticated Edgecam software after KIHM allowed its Licensed Products' maintenance support plan to lapse and be "sunsetted."

79. KIHM has a direct financial interest in the infringing activity of its employees and/or agents, including Mr. Bailey, by profiting from the products it makes, creates, designs, and sells and services it offers.

80. KIHM reaps a financial benefit from the infringing activity because the use of the unlicensed, fully unlocked Infringing Product provides the instrumentality by which KIHM manufactures the products it sells to its customers and services offered using the Infringing Product, which in turn acts as a draw for its customers.

81. There is a causal relationship between Mr. Bailey's infringing activity and the financial benefit KIHM reaps as the products sold by KIHM to its customers are made with the Infringing Product which acts as a draw to its customers. KIHM boasts of its use of such products on its website by stating "KIHM brings together a suite of sophisticated CAD and CAM platforms such as Solid Works, MasterCam Solids, Inventor, NX, Surfcam, Multicam Solids, and Cimco. Our quality system ensures the utmost control of engineering and CAD data throughout the production process." KIHM Metal Technologies, Inc., Operations Excellence, https://www.kihmmetaltech.com/operations-excellence-and-service/ (last visited Jan. 7, 2026).

82. KIHM, as employer, has the right and ability to supervise the infringing activity of its employees and agents, including Mr. Bailey, and the right to monitor computer usage at and for KIHM.

83. KIHM, as employer, has both a legal right to stop or limit the infringing activity of its employees and agents, including Mr. Bailey, but declined to exercise its right to stop or limit the infringing activity.

84. KIHM did not have Hexagon's authorization to install, use, or copy the Infringing Product, nor to permit, condone, or authorize its employees or agents to do so.

85. On information and belief, KIHM directly benefited and profited from Mr. Bailey's direct infringement by utilizing the Infringing Product after it could no longer purchase a maintenance support plan for the Licensed Products and allowed the Licensed Products to be "sunsetted."

86. KIHM has a further direct financial interest because the Infringed Product is a newer, more advanced version of the Licensed Products KIHM was no longer using at the time of the infringement.

87. As a direct and proximate result of the vicarious infringement by KIHM, Hexagon is entitled to actual damages and KIHM's profits in amounts to be proven at trial.

88. Alternatively, at its election, Hexagon is entitled to statutory damages, up to the

maximum amount of $150,000 per infringing work for KIHM's vicarious infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

89. Hexagon further is entitled to recover its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

90. As a direct and proximate result of KIHM's acts and conduct, Hexagon has sustained and will sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant KIHM will likely continue to infringe Hexagon's rights in the Copyrighted Works. Hexagon is entitled to injunctive relief under 17 U.S.C. § 502.

## COUNT III

### Breach of Contract (EULA) Against KIHM

91. Hexagon incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

92. KIHM entered into a valid and binding contract (i.e., the EULA) with Hexagon upon installation of the Licensed Products and the Infringing Product.

93. Specifically, KIHM agreed it and its employees are precluded from unlawfully copying Hexagon's software and from accessing unlocked source code.

94. KIHM further agreed to use Hexagon's software within the scope of the license grant.

95. KIHM also had a duty to supervise and control its employees' use of Hexagon's software and ensure its employees use Hexagon's software in accordance with the terms of the EULA.

96. KIHM had the ability to supervise and control its employees' use of Hexagon's software, but failed to do so and failed to ensure such use is in accordance with the terms of the EULA. Such failure constitutes a breach of the EULA.

97. KIHM further breached the EULA by failing to use Hexagon's software within the scope of the license grant.

98. KIHM also breached the EULA by unlawfully accessing unlocked source code vis-à-vis the Infringing Product.

99. KIHM's breaches of the EULA relate to it and its employees' "use" which is qualitatively different than "copying" prohibited by the Act.

100. KIHM's breaches of the EULA caused Hexagon to be damaged in an amount to be proven at trial.

## COUNT IV

### Permanent Injunction against Defendants

### 17 U.S.C. § 502(a)

101. Hexagon incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

102. Defendants copied, downloaded, and accessed the unlicensed Infringing Product. Defendants have failed to confirm they will cease using the unauthorized software.

103. Defendants' blatant disregard for the law and their failure to otherwise respond shows they are likely to continue to engage in future wrongful conduct.

104. Hexagon does not have an adequate remedy at law to guard against future infringement by Defendants.

105. Hexagon requests a permanent injunction be entered against Defendants prohibiting continued infringement of Hexagon's copyrights pursuant to 17 U.S.C. § 502(a).

## PRAYER FOR RELIEF

Hexagon prays for judgment against Defendants, and their affiliates, agents, servants, employees, partners and all persons in active concert or participation with them, for the following relief:

1. Award Hexagon actual damages and profits in such amount as may be found; alternatively, at Hexagon's election, for maximum statutory damages for willful infringement; or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c);

2. Award Hexagon damages for breaches of the EULA, including, but not limited to, the value of the Infringing Product, the cost of a maintenance support plan, and additional damages as the Court deems just and proper.

3. Issue an order permanently enjoining Defendants, and all persons acting in concert or participation with them, from infringing any of Hexagon's exclusive rights under 17 U.S.C. § 106 by using the Copyrighted Works.

4. For treble damages, costs and prejudgment interest, and for such other amounts as may be proven at trial or as otherwise provided by federal or state law.

5. For Hexagon's attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505, under the terms of the EULA, the Settlement Agreement, and pursuant to common law or statutory rights.

6. For other and further relief, in law or in equity, to which Hexagon may be entitled or which the Court deems just and proper.

Dated: January 9, 2026.

*Chelsea R. Stanley*
Chelsea R. Stanley (Attorney No. 32770-22)
Zachary M. VanVactor (Attorney No. 31806-10)
STITES & HARBISON PLLC
323 East Court Avenue
Jeffersonville, IN  47130
Telephone: (812) 282-7566
Email: cstanley@stites.com
Email: zvanvactor@stites.com

Sarah E. Elsden, WA #51158
(*pro hac application forthcoming*)
Kutak Rock LLP
510 W. Riverside Avenue, Suite 800
Spokane, WA 99201
Telephone: (509) 747-4040
Email: sarah.elsden@kutakrock.com

*Counsel for Plaintiff Hexagon Manufacturing Intelligence, Inc.*